# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OCEAN SPRAY CRANBERRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DECAS CRANBERRY PRODUCTS, INC., DECAS CRANBERRY SALES, INC., DECAS CRANBERRY CO., INC., LEGACY BOGS, LLC, JOHN SWENDROWSKI, JOHN DOE HANDLERS 1-5 and JOHN DOE GROWERS 3-20, <br><br> Defendants. | Civil Action No. 1:10-cv-11288-RWZ <br><br> **FIRST AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **LEAVE TO FILE GRANTED ON DECEMBER 9, 2010** |

Plaintiff Ocean Spray Cranberries, Inc. ("Ocean Spray") brings this action for damages, injunctive relief, attorneys fees and costs of suit against defendants Decas Cranberry Products, Inc., Decas Cranberry Sales, Inc., Decas Cranberry Co., Inc. (collectively, "Decas Cranberry"), Legacy Bogs, LLC, John Swendrowski, John Doe Handlers 1-5 and John Doe Growers 3-20, and alleges as follows:

<u>SUMMARY OF CLAIMS</u>

1.      This complaint is based upon an unlawful and malicious campaign orchestrated by Decas Cranberry, Legacy Bogs, Swendrowski, the John Doe Handlers and the John Doe Growers against Ocean Spray. This campaign falsely accuses Ocean Spray of harming the cranberry industry that Ocean Spray has been an integral part of for more than 80 years. The campaign is designed to damage Ocean Spray's reputation, to frustrate Ocean Spray's

relationships with its customers, and to undermine Ocean Spray's dealings with its grower-owners and with other cranberry growers across the industry.

2.      Decas Cranberry launched this campaign against Ocean Spray, its direct competitor, in or about 2009, and has used a variety of tactics and media for its campaign, including widely distributed letters and emails, internet blogs and websites, Facebook accounts, YouTube videos and Twitter postings.

3.      Recently, as part of this campaign, Decas Cranberry, Legacy Bogs, Swendrowski, the John Doe Handlers and the John Doe Growers have solicited cranberry growers (including Ocean Spray's grower-owners) not to work with Ocean Spray, and to join a lawsuit against Ocean Spray by falsely claiming that Ocean Spray is violating the law, including the federal antitrust laws.  This conduct violates the Agricultural Fair Practices Act, 7 U.S.C. §§ 2301 et seq., which is designed to protect growers from precisely this type of conduct.

4.      Decas Cranberry also recently attacked Ocean Spray in a marketing campaign called Scamberry.org that Decas Cranberry misleadingly suggested emanated from an independent consumer advocacy group, instead of from Decas Cranberry itself.

5.      Each false and deceptive act of the campaign has been designed for the same purpose, to smear Ocean Spray and to harm its relationships with growers, customers, and consumers, all with the hope of increasing Decas Cranberry's profits at Ocean Spray's expense. These activities therefore also violate the Lanham Act, 15 U.S.C. § 1125(a), and the Massachusetts Unfair and Deceptive Trade Practices Act, Mass. Gen. Laws ch. 93A.

**JURISDICTION AND VENUE**

6.      Ocean Spray brings this action pursuant to the Agricultural Fair Practices Act ("AFPA"), 7 U.S.C. §§ 2301 et seq., Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and

the Massachusetts Unfair and Deceptive Trade Practices Act, Mass. Gen. Laws ch. 93A, to prevent and restrain defendants' violations of the law and to recover damages, the costs of this suit, and reasonable attorneys' fees.

7.      This Court has jurisdiction over the federal claims alleged under 28 U.S.C. § 1331, and over the state law claims alleged under 28 U.S.C. § 1367(a).

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because during the relevant period, defendants resided, transacted business, were found, or had agents in this district, and/or because a substantial portion of the affected interstate trade and commerce described herein has been carried out in this district.

## INTERSTATE COMMERCE

9.      Defendants' activities challenged in this complaint were within the flow of and substantially affected interstate commerce.

10.     During the relevant period, Ocean Spray produced, sold and/or distributed substantial quantities of cranberries and cranberry products in a continuous and uninterrupted flow of interstate commerce to customers located in this district and throughout the United States, and defendants' actions were designed to hinder and/or substantially affect those activities.

## THE PARTIES

11.     Plaintiff Ocean Spray Cranberries, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at One Ocean Spray Drive, Lakeville-Middleboro, MA 02349.

12.     Defendant Decas Cranberry Products, Inc. is a corporation organized and existing under the laws of Massachusetts with a principal place of business at 4 Old Forge Drive, Carver, MA 02330.

13.     [Paragraph Intentionally Left Blank]

14.     Defendant Decas Cranberry Co., Inc. is a corporation organized and existing under the laws of Massachusetts with a principal place of business at 4 Old Forge Drive, Carver, MA 02330.

15.     Defendant Decas Cranberry Sales, Inc. is a corporation organized and existing under the laws of Massachusetts with a principal place of business at 4 Old Forge Drive, Carver, MA 02330.

16.     Defendant Legacy Bogs, LLC is a corporation organized and existing under the laws of Wisconsin with a principal place of business at 2321 West Grand Avenue, Wisconsin Rapids, WI 54495.  Legacy Bogs is subject to personal jurisdiction in this District under the United States Constitution and pursuant to Mass. Gen. Laws ch. 223A, § 3.

17.     Defendant John Swendrowski is a resident of the state of Wisconsin, with a residence located at 2530 Ridgewood Trail, Wisconsin Rapids, WI 54494.  Swendrowski is subject to personal jurisdiction in this District under the United States Constitution and pursuant to Mass. Gen. Laws ch. 223A, § 3.

18.     Defendants John Doe Growers 3-20 are independent cranberry growers in the U.S. who are not members of the Ocean Spray cooperative.  The John Doe Growers, personally and/or through their agents, communicated with and/or organized and held meetings with cranberry growers in Massachusetts, Oregon and Wisconsin during which the John Doe Growers

and/or their agents falsely claimed that Ocean Spray is violating the law, including the federal antitrust laws.

19.     Defendants John Doe Handlers 1-5 are cranberry handlers in the U.S.  The John Doe Handlers, personally and/or through their agents, communicated with and/or organized and held meetings with cranberry growers in Massachusetts, Oregon and Wisconsin during which the John Doe Handlers and/or their agents falsely claimed that Ocean Spray is violating the law, including the federal antitrust laws.

## INDUSTRY BACKGROUND

20.     Ocean Spray is an agricultural cooperative.  It was formed in 1930 by three cranberry growers from Massachusetts and New Jersey with a singular mission to develop and promote cranberries and cranberry products.

21.     As an agricultural cooperative, Ocean Spray is owned by its 650 grower-owners. The majority of these grower-owners have been growing cranberries on small family-owned farms in Massachusetts and in other states for multiple generations.

22.     Ocean Spray's grower-owners provide the capital to allow the company to operate, as well as the cranberries that are used to make the company's renowned cranberry products, including a wide variety of juices and other beverages, sweetened dried cranberries ("SDCs"), sauces and other products.  It is these growers who obtain the financial benefits from the sales of these products.  The revenues that Ocean Spray generates above its costs are distributed to its grower-owners as patronage dividends based on their contribution of cranberries.

23.     Ocean Spray's mission is to continually expand the market for its grower-owners' cranberries.  Ocean Spray has been the leading innovator for cranberry products in the world.  It

introduced Cranberry Juice Cocktail in 1930, the first juice blend Cranapple® Cranberry Apple Juice Drink in 1964, juice drinks in paper boxes in 1981, juice drinks in plastic PET bottles in 1981, and Craisins® brand SDCs for sale to consumers in 1993.

24.     Ocean Spray has been the driving force behind the most recent success of cranberry products to the benefit of Ocean Spray's grower-owners.

25.     Through innovative new products and ingredients, and expansion into new international markets, Ocean Spray has increased the demand for cranberries by over 1 million barrels since 2002 (a barrel equals 100 pounds of cranberries).  From 2006 to 2009, Ocean Spray increased cranberry utilization by approximately 200,000 barrels.   In fact, Ocean Spray management is financially incented to increase cranberry utilization.

26.     Not only has Ocean Spray substantially increased the demand for cranberries over recent time, but also, as a cooperative, Ocean Spray has paid the benefits of this increased demand to its cranberry farmers in the form of dramatically increased grower returns.  In 1999 Ocean Spray paid its grower owners  $12.98 per barrel.  Over the past ten years, Ocean Spray's efforts have increased its grower returns by a compound annual growth rate of 19% such that Ocean Spray paid its grower owners $61.84 per barrel on the 2008 crop.

27.     Members of the Ocean Spray cooperative are divided into two "pools":  the "A-Pool" and the "B-Pool."

28.     Ocean Spray A-Pool growers supply cranberries for use in Ocean Spray branded and value-added products, such as Ocean Spray Cranberry Juice Cocktail, Cranapple® juice and Craisins®.

29.     Ocean Spray B-Pool growers supply cranberries for processing and sale into the food ingredient channel as commodity products, such as concentrate and industrial frozen whole

or sliced fruit.  The B-Pool was established prior to the 2006 cranberry harvest.  In its short history, the B-Pool has sometimes paid higher returns than the A-Pool (*e.g.*, 2006-2007 crop years), and sometimes paid lower returns than the A-Pool (*e.g.*, 2008 crop year).  Following each of the 2006-2008 harvests, Ocean Spray provided all B-Pool growers an opportunity to transfer into the A-Pool.

30.     Decas Cranberry claims that it is the second largest cranberry company in the world.  Decas Cranberry processes and sells over 50 million pounds of cranberries in over 20 countries around the world, including throughout the United States.  In its processing facilities in Carver, MA, Decas Cranberry produces a full line of cranberry products, including cranberry concentrate, SDCs, cranberry extract powders and oils, and fresh whole cranberries.

31.     Decas Cranberry and/or its affiliates also currently own over 500 acres of cranberry bogs in Massachusetts.

32.     Decas Cranberry is a direct competitor of Ocean Spray in the business of producing and selling cranberries and cranberry food products, including SDCs.

33.     Decas Cranberry considers Ocean Spray to be its largest competitor in the business of producing and selling cranberries and cranberry food products, including SDCs.

34.     Legacy Bogs is a Wisconsin-based grower of cranberries.  Legacy Bogs currently operates three growing properties in Wisconsin.

35.     John Swendrowski is also a Wisconsin-based grower of cranberries and is affiliated with Legacy Bogs.

## DEFENDANTS' UNLAWFUL ACTIVITIES

### False Claims on Decas Cranberry Corporate Website

36.     Decas Cranberry's false and misleading campaign against Ocean Spray dates back to at least the summer of 2009 and has its roots in a website blog called "The Decas Blog" that Decas Cranberry maintains on its corporate website (www.decascranberry.com) and that functions as a marketing tool.  The Decas Blog is directed at both cranberry growers and cranberry customers.

37.     In August 2009, Decas Cranberry posted a "letter" on its blog that discussed what it characterized as "a significant oversupply of cranberries" in the industry and that falsely claimed that Ocean Spray was responsible for it, at least in part.  *See* http://decascranberry.com/wordpress/2009/08/.  For example, Decas Cranberry falsely claimed that starting in 2007, Ocean Spray created "reduced utilization" of cranberries by "cut[ting] back on availability of concentrate and IQF berries," thus driving up prices and causing customers to use less berries in their products.  The letter also falsely claimed that Ocean Spray was "dumping . . . concentrate on the market" in a manner that would injure its own grower-owners.

38.     Decas Cranberry has continued to use its blog to disseminate false claims about Ocean Spray—including that Ocean Spray is responsible for reduced cranberry utilization, is causing oversupply and is damaging the industry—and has ratcheted up its rhetoric in the last few months.  For example, in a November 2009 "Market Update" post, Decas Cranberry falsely accused Ocean Spray of contributing to reduced cranberry utilization by "reducing the amount of cranberries in [its] products."

39.     In a February 2010 letter sent to a number of cranberry growers, including Ocean Spray growers, and posted on its corporate website, Decas Cranberry falsely accused Ocean

Spray of contributing to the alleged "existing surplus" by "reformulat[ing their products] with less cranberry."  In a March 2010 "Market Update" post, Decas Cranberry falsely claimed that Ocean Spray was harming the industry by "dump[ing] cranberry products into the ingredients market at prices below what it costs to allow a reasonable return to growers (including theirs)." In a May 17, 2010 blog post, Decas Cranberry falsely accused Ocean Spray of "resorting to reducing the amount of cranberry content in their products" in order to "cut costs on the money lost through cranberry price fluctuations."

## Decas Cranberry and John Doe Defendants' False Claims that Ocean Spray is Violating the Law

40.     Decas Cranberry continued its smear campaign against Ocean Spray on September 11, 2009, when it sent a letter to the U.S. Attorney General falsely accusing Ocean Spray of violating the federal antitrust laws and asking the Department of Justice to investigate Ocean Spray's conduct and to stop it.  Decas Cranberry, in turn, used this letter as a marketing tactic, sending it to independent growers on or around September 18, 2009 to induce them to "collectively take action" against Ocean Spray and to "all act together to protect our interests."

41.     In the September 11 letter, Decas Cranberry falsely and misleadingly claimed that Ocean Spray was planning a "massive expansion of cranberry bogs," including planting 2,000 new acres in New Brunswick, Canada.  In fact, Ocean Spray only planned to plant 150 acres of cranberry beds in New Brunswick.

42.     Decas Cranberry continued to recruit growers to join it in "taking action" against Ocean Spray, ultimately linking up with Legacy Bogs, Swendrowski, the John Doe Growers and the John Doe Handlers.

43.     Since then Decas Cranberry, the John Doe Handlers and the John Doe Growers have continued to falsely report to cranberry growers, including both independent growers and members of Ocean Spray's B-Pool, that Ocean Spray is violating the law, including the federal antitrust laws.  Defendants' false statements are intended to influence B-Pool members to cease participating in the Ocean Spray cooperative, and to influence other independent cranberry growers not to join the Ocean Spray cooperative, if given the opportunity.

44.     Decas Cranberry, the John Doe Handlers and the John Doe Growers have also falsely reported to growers that Ocean Spray is violating the law by reducing cranberry utilization and engaging in product mislabeling practices.

45.     Decas Cranberry, the John Doe Handlers and the John Doe Growers have solicited and encouraged members of Ocean Spray's B-Pool and other independent growers to join a lawsuit that defendants intend to file against Ocean Spray for alleged violations of the law, including the federal antitrust laws.

46.     On September 9, 2010, Decas Cranberry confirmed on its corporate blog that the Decas Cranberry farms would be signing on as plaintiffs in this purported lawsuit.

47.     Decas Cranberry, the John Doe Handlers and the John Doe Growers have encouraged and/or induced members of Ocean Spray's B-Pool to cease participating in the Ocean Spray cooperative in order to have the opportunity to participate as plaintiffs in defendants' lawsuit against Ocean Spray and to collect a portion of any damages recovered or any settlement.

48.     Decas Cranberry, the John Doe Handlers and the John Doe Growers have encouraged and/or induced certain independent cranberry growers not to participate in the Ocean Spray cooperative, if given the opportunity, in exchange for having the opportunity to participate

as plaintiffs in defendants' lawsuit against Ocean Spray and to collect a portion of any damages recovered or any settlement.

**Legacy Bogs and Swendrowski's False Statements About Ocean Spray**

49.     Legacy Bogs and Swendrowski joined Decas Cranberry's smear campaign against Ocean Spray at least as early as November 1, 2010.

50.     Cranberries Limited, Inc. ("CLI") is a cranberry handler for which Swendrowski serves as President and CEO.  CLI is affiliated with approximately 70 cranberry growers in Massachusetts, Oregon and Wisconsin.

51.     On or around November 1, 2010, Swendrowski on behalf of himself and Legacy Bogs sent a letter to cranberry growers affiliated with CLI, including growers in Massachusetts, with the intent to influence them not to join the Ocean Spray cooperative, if given the opportunity, in exchange for having the opportunity to participate as plaintiffs in a lawsuit against Ocean Spray and to collect a portion of any damages recovered or any settlement.

52.     The November 1 letter falsely accuses Ocean Spray of misrepresenting supply and demand conditions in the industry and conducting "sham auctions" for cranberry concentrate.  The letter also falsely asserts that Ocean Spray has "created" a "great price gap" between the prices that members of the Ocean Spray cooperative receive for delivering their fruit to the Ocean Spray cooperative, and the prices that growers who are not members of the Ocean Spray cooperative receive when they sell their fruit.  This letter also falsely claims that Ocean Spray's actions violate the law.

53.     Swendrowski and Legacy Bogs' false statements are intended, among other things, to influence these cranberry growers not to join the Ocean Spray cooperative, if given the opportunity.

54.     In this letter, Swendrowski told the growers that he supports a lawsuit that is purportedly about to be filed against Ocean Spray and that he has signed up Legacy Bogs as a plaintiff. Swendrowski urged these other growers to join the lawsuit as well, telling them that the lawsuit may be the only way for them and other non-Ocean Spray growers to "avoid bankruptcy and a loss of [their] family farm."

55.     Swendrowski, on behalf of himself and Legacy Bogs, provided a copy of this letter to Decas Cranberry. Decas Cranberry has subsequently distributed Swendrowski's November 1 letter to additional cranberry growers beyond those affiliated with CLI, including growers in Massachusetts.

56.     Swendrowski and Legacy Bogs have caused tortious injury to Ocean Spray in Massachusetts by, among other things, sending the November 1 letter to Decas Cranberry and other growers in Massachusetts with the intent to harm Ocean Spray, its business and reputation. Swendrowski and Legacy Bogs knowingly sent the letter containing false statements about Ocean Spray into Massachusetts, intending that it should be relied upon to the injury of Ocean Spray, a Massachusetts resident.

**Decas Cranberry's False and Misleading Scamberry.org Campaign**

57.     Decas Cranberry continued its attack on Ocean Spray in July 2010, when it launched a false and misleading commercial marketing and public relations campaign about Ocean Spray's SDC product called "Choice."

58.     Ocean Spray introduced "Choice" in March 2009 as a lower cost alternative to its other SDCs.

59.     Ocean Spray's Choice product is made from Grade A superior frozen whole cranberries which are then sliced and sent through its patented process including infusion of

sugar, citric acid and elderberry juice to infuse flavor and color.  Ocean Spray specifically developed Choice to meet its industrial customers' demands for their variety of recipes that require specific taste, texture, size and color combinations.  Since it is made from whole cranberries, Choice retains many of the same healthful compounds as other SDCs.

60.     Decas Cranberry currently markets and sells its SDC products in direct competition with Ocean Spray's SDC products, including Choice.

61.     In July 2010, Decas Cranberry launched an advertising campaign called "Scamberry.org."  This false and misleading campaign was designed to harm Ocean Spray's reputation, to deter purchasers from buying the Choice product with the intention of influencing those customers to purchase Decas Cranberry's SDCs instead, and to influence cranberry growers not to join or to cease participating in the Ocean Spray cooperative.

62.     Prior to June 2010, Decas Cranberry retained Boston-based media and marketing firm, InkHouse Media + Marketing (www.inkhouse.net) ("InkHouse") to assist it in developing a false and misleading social media campaign targeted at the Choice product.  As of July 15, 2010, Decas Cranberry was listed as a client on the InkHouse corporate website.

63.     On or around June 22, 2010, InkHouse purchased the website URL "Scamberry.org".

64.     At least as of July 15, 2010, the Scamberry.org website was directed to and accessible by cranberry growers (both members and non-members of Ocean Spray's cooperative) and to purchasers and potential purchasers of Ocean Spray's products.

65.     The Scamberry.org site was attributed to "the Scamberry Initiative" and described Scamberry.org as "a consumer education initiative about mislabeling."  The website made no

mention of any connection to Decas Cranberry.   Moreover, the ".org" URL address was intentionally used to imply a non-profit organization.

66.     The Scamberry.org site also falsely and misleadingly claimed that, by developing, marketing and selling the Choice product, Ocean Spray is harming the cranberry industry because it takes fewer barrels of cranberries to create the Choice product than it does to create Ocean Spray's other SDC products.  The sited claimed that Ocean Spray is "delug[ing] both food manufacturers and retail stores with their [Choice] product" and that it has "abandoned the cranberry," with the clear false implication being that Ocean Spray is causing significant excess supply of cranberries in the industry that depresses the price and utilization of cranberries.  The site also falsely claimed that Ocean Spray is engaging in product mislabeling practices.

67.     The Scamberry.org site contained a link to a YouTube video called "The Scamberry."  The YouTube video also falsely and misleadingly accused Ocean Spray of harming the cranberry industry and "abandoning the cranberry," and of introducing Choice solely for "corporate greed" and with a "blind focus on profits."

68.     The video and the website allege that Ocean Spray has produced the Choice product for its own corporate profit by misstating that the "favorable return" relating to Choice is only for Ocean Spray, and not for "growers," thereby harming the cranberry industry.  This is false.  Any "favorable return" that Ocean Spray generates from the sale of Choice is paid to its grower-owners as patronage dividends.

69.     The Scamberry.org site linked directly to a Twitter account called @Scamberry.

70.     Decas Cranberry and InkHouse used the Twitter account to send links to the Scamberry.org website and "The Scamberry" YouTube video to growers, customers, consumers

and consumer advocacy organizations urging them to "take action" against Ocean Spray in connection with the Choice product.

71.     The Scamberry.org web site also linked to a Facebook page called Scamberry. The Facebook page also urged people to "take action" against Ocean Spray in connection with Choice and contained links to the Scamberry.org website and the YouTube video.

72.     Decas Cranberry (and/or InkHouse at Decas Cranberry's direction) created a fictitious Facebook account in the name of "Michele Young" to post information about Scamberry.org on Ocean Spray's Facebook page, and also created a petition against Ocean Spray based on the misleading information posted by Scamberry.org on Change.org, a consumer advocacy website.  On this Facebook page "Michele Young" posed as a "consumer advocate" providing links to each of these websites.

73.     On or around July 15, 2010, John Decas, Chairman of the Board of Decas Cranberry, sent out an email to cranberry growers, including growers in the Ocean Spray cooperative, with links to the Scamberry.org petition on Change.org.  He claimed in the email that "someone saw this on the internet and forwarded it to [him]" and thus intentionally and misleadingly suggested that Decas Cranberry had no involvement with Scamberry.org.  He encouraged the recipients of the email to "[s]hare it as [they] see fit" and further stated that the content represented "[a] perfect example of one way our industry and the surplus is being manipulated."

74.     Decas Cranberry intentionally omitted its connection to Scamberry.org, YouTube and the other social media outlets so that customers, consumers and growers would be deceived into believing that the site was sponsored by an independent consumer advocacy group, and not a competitor of Ocean Spray.

75.     On or around July 15, 2010, Ocean Spray conducted an investigation into Scamberry.org and uncovered its connection with Decas Cranberry.  On July 16, 2010, Ocean Spray contacted two principals at InkHouse to discuss Scamberry.org and to ask for all false and misleading material about Ocean Spray to be removed from the website and related media. InkHouse acknowledged that Decas Cranberry was its client and agreed to remove/shutdown all of the Scamberry-related material and media controlled by its agency.  Within hours, InkHouse had shut down the Scamberry.org website and the related Twitter, Facebook and YouTube channels, and "Michele Young" ceased to exist on Facebook.  InkHouse also advised Ocean Spray orally and in writing that InkHouse would be terminating its relationship with Decas Cranberry.

76.     As of the date of this complaint, InkHouse has removed the Decas Cranberry logo and any reference to Decas Cranberry as a client from the InkHouse corporate website. InkHouse subsequently transferred ownership and/or control of Scamberry.org from InkHouse to Decas Cranberry.

77.     By the evening of July 16, 2010, the URL Scamberry.org was being redirected to a website with the URL "Scamberry.info."  Most of the material that appeared on Scamberry.org was republished verbatim at Scamberry.info.  The title of the first post is "Exposing Ocean Spray's Choice Product."

78.     A new YouTube channel called "The Scamberry" was created and linked directly to Scamberry.info.  The YouTube channel features the same video that was used on the Scamberry.org website.

79.     In the face of growing media attention and Ocean Spray's claims that Scamberry.org was false and misleading, Decas Cranberry was finally forced to acknowledge its

connection to Scamberry.org.   On or around July 22, 2010, John Decas sent an email to cranberry growers and customers claiming that Decas Cranberry sponsored the Scamberry YouTube video and identifying a link to it.  In that email, Decas admitted that the purpose of the video was "to defend the share of the SDC market which Choice has taken from [Decas Cranberry] and others, the value of authentic SDC's which Choice has greatly diminished and our grower returns that Choice has damaged."  In that email, Decas also falsely claimed that Choice "has damaged our industry," that it results in Ocean Spray having "concentrate that they dump into the industrial market," and that "Choice increases the [cranberry] surplus."

80.     On the same date, Decas Cranberry also issued a press release stating that "Decas Cranberry Products, Inc. announces the launching of a new consumer education website www.scamberry.org."   Available at http://www.businesswire.com/portal/site/home/permalink/?ndmViewId=news_view&newsId=20100722006402&newsLang=en.

81.     As of the date of this complaint, both the Scamberry.info website and the linked "The Scamberry" YouTube video continue to falsely and misleadingly claim that Ocean Spray is harming the cranberry industry and "abandoning the cranberry," and that it introduced Choice solely for "corporate greed" and with a "blind focus on profits."   Both also continue to urge visitors to the site to "take action" against Ocean Spray.

82.     As of the date of this complaint, the URL "Scamberry.org" continues to automatically redirect to the site "Scamberry.info."  Before August 3, 2010, the day after Ocean Spray filed the initial complaint in this matter, neither the Scamberry.info site nor the YouTube video contained any reference to Decas Cranberry.  A consumer visiting the website or watching the video would have had no information leading him or her to believe that the website and video

were sponsored by Decas Cranberry for the purpose of selling more Decas Cranberry products.

A copy of the Scamberry.info website as of July 22, 2010 is attached as Exhibit A.

<u>COUNT I – Against All Defendants</u>
**(Violation of the Agricultural Fair Practices Act, 7 U.S.C. § 2303(d) –**
**Improper Offer of Inducement)**

83.     Ocean Spray repeats and realleges each and every allegation of this complaint.

84.     Decas Cranberry is a "handler" within the meaning of the AFPA, 7 U.S.C. § 2302(3), in that it is engaged in the business of acquiring cranberries for processing and sale; grading, packaging, handling, storing, or processing cranberries received from producers and/or associations of producers; and/or negotiating contracts and other arrangements with and on behalf of producers and associations of producers.

85.     John Doe Handlers 1-5 are "handlers" within the meaning of AFPA, 7 U.S.C. § 2302(3), in that they are engaged in the business of acquiring cranberries for processing and sale; grading, packaging, handling, storing, or processing cranberries received from producers and/or associations of producers; and/or negotiating contracts and other arrangements with and on behalf of producers and associations of producers.

86.     John Doe Growers 3-20 are "producers" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that they are engaged in the growing of cranberries and the production of cranberry products.

87.     Legacy Bogs is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

88.     John Swendrowski is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that he is engaged in the growing of cranberries.

89.     Decas Cranberry is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

90.     Decas Cranberry, Legacy Bogs, Swendrowski and John Doe Growers 3-20 are an "association of producers" within the meaning of AFPA, 7 U.S.C. § 2302(2), in that they are collectively engaged in the marketing of cranberries and cranberry products by participating together in an effort to harm the reputation of Ocean Spray, their direct competitor, to deter purchasers from buying Ocean Spray's products with the intention of influencing those customers to purchase their products instead, and to influence cranberry growers not to join or to cease participating in the Ocean Spray cooperative.

91.     The members of the Ocean Spray agricultural cooperative are "producers" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that they are engaged in the growing of cranberries and the production of cranberry products.

92.     The Ocean Spray cooperative is an "association of producers" within the meaning of the AFPA, 7 U.S.C. § 2302(2), in that its members are engaged in the marketing, bargaining, shipping and processing of cranberries and cranberry products.

93.     Decas Cranberry, the John Doe Handlers and the John Doe Growers knowingly and unlawfully offered, and/or permitted their employees and/or agents to offer, the inducement of a prospective successful litigation against or settlement with Ocean Spray to producer-members of the Ocean Spray cooperative to induce them to cease belonging to the cooperative, in violation of the AFPA, 7 U.S.C. § 2303(d).

94.     Decas Cranberry, Legacy Bogs, Swendrowski, the John Doe Handlers and the John Doe Growers knowingly and unlawfully offered, and/or permitted their employees and/or agents to offer, the inducement of a prospective successful litigation against or settlement with

19

Ocean Spray to cranberry producers who are not members of the Ocean Spray cooperative to induce them not to join the Ocean Spray cooperative, if given the opportunity, in violation of the AFPA, 7 U.S.C. § 2303(d).

95.     As a direct and proximate result of defendants' unlawful conduct, the Ocean Spray cooperative has suffered and/or is likely to suffer damages and irreparable injury to its reputation and business in the form of lost beneficial business relationships with individual cranberry producers.

96.     Unless and until defendants' actions are enjoined, Ocean Spray will continue to suffer irreparable harm and damages.

97.     Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its damages in an amount to be determined at trial.

98.     Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its reasonable costs and attorneys' fees in an amount to be determined at trial.

### COUNT II – Against all Defendants
**(Violation of the Agricultural Fair Practices Act, 7 U.S.C. § 2303(e) –**
**False Statements About Violations of the Law)**

99.     Ocean Spray repeats and realleges each and every allegation of this complaint.

100.     Decas Cranberry is a "handler" within the meaning of the AFPA, 7 U.S.C. § 2302(3), in that it is engaged in the business of acquiring cranberries for processing and sale; grading, packaging, handling, storing, or processing cranberries received from producers and/or associations of producers; and/or negotiating contracts and other arrangements with and on behalf of producers and associations of producers.

101.     John Doe Handlers 1-5 are "handlers" within the meaning of the AFPA, 7 U.S.C. § 2302(3), in that they are engaged in the business of acquiring cranberries for processing and

sale; grading, packaging, handling, storing, or processing cranberries received from producers and/or associations of producers; and/or negotiating contracts and other arrangements with and on behalf of producers and associations of producers.

102.    John Doe Growers 3-20 are "producers" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that they are engaged in the growing of cranberries and the production of cranberry products.

103.    Legacy Bogs is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

104.    John Swendrowski is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that he is engaged in the growing of cranberries.

105.    Decas Cranberry is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

106.    Decas Cranberry, Legacy Bogs, Swendrowski and John Doe Growers 3-20 are an "association of producers" within the meaning of AFPA, 7 U.S.C. § 2302(2), in that they are collectively engaged in the marketing of cranberries and cranberry products by participating together in an effort to harm the reputation of Ocean Spray, their direct competitor, to deter purchasers from buying Ocean Spray's products with the intention of influencing those customers to purchase their products instead, and to influence cranberry growers not to join or to cease participating in the Ocean Spray cooperative.

107.    The members of the Ocean Spray agricultural cooperative are "producers" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that they are engaged in the growing of cranberries and the production of cranberry products.

108.    The Ocean Spray cooperative is an "association of producers" within the meaning of AFPA, 7 U.S.C. § 2302(2), in that its members are engaged in the marketing, bargaining, shipping, and processing of cranberries and cranberry products.

109.    Decas Cranberry, the John Doe Handlers and the John Doe Growers knowingly and unlawfully falsely represented, and/or permitted their employees and/or agents to falsely represent to the producer-members of the Ocean Spray cooperative that Ocean Spray is violating the law, including the federal antitrust laws.  Such representations were made with the intention of and/or with the effect of influencing the Ocean Spray producer-members to cease participating in the cooperative.    These representations constitute false reports about the finances, management, or activities of the Ocean Spray agricultural cooperative in violation of the AFPA, 7 U.S.C. § 2303(e).

110.    Decas Cranberry, Legacy Bogs, Swendrowksi, the John Doe Handlers and the John Doe Growers knowingly and unlawfully falsely represented, and/or permitted their employees and/or agents to falsely represent, to producers who are not members of the Ocean Spray cooperative that Ocean Spray is violating the law, including the federal antitrust laws. Such representations were made with the intention of and/or with the effect of influencing these producers not to join the Ocean Spray cooperative, if given the opportunity.    These representations constitute false reports about the finances, management, or activities of the Ocean Spray agricultural cooperative in violation of the AFPA, 7 U.S.C. § 2303(e).

111.    As a direct and proximate result of defendants' unlawful conduct, the Ocean Spray cooperative has suffered and/or is likely to suffer damages and irreparable injury to its reputation and business in the form of lost beneficial business relationships with individual cranberry producers.

112.    Unless and until defendants' actions are enjoined, Ocean Spray will continue to suffer irreparable harm and damages.

113.    Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its damages in an amount to be determined at trial.

114.    Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its reasonable costs and attorneys' fees in an amount to be determined at trial.

**COUNT III – Against Decas Cranberry, Legacy Bogs and Swendrowski**
**(Violation of the Agricultural Fair Practices Act, 7 U.S.C. § 2303(e) –**
**False Statements about Harming the Industry)**

115.    Ocean Spray repeats and realleges each and every allegation of this complaint.

116.    Decas Cranberry is a "handler" within the meaning of the AFPA, 7 U.S.C. § 2302(3), in that it is engaged in the business of acquiring cranberries for processing and sale; grading, packaging, handling, storing, or processing cranberries received from producers and/or associations of producers; and/or negotiating contracts and other arrangements with and on behalf of producers and associations of producers.

117.    Decas Cranberry is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

118.    Legacy Bogs is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

119.    Swendrowski is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that he is engaged in the growing of cranberries.

120.    Decas Cranberry, Legacy Bogs and Swendrowski are an "association of producers" within the meaning of AFPA, 7 U.S.C. § 2302(2), in that they are collectively engaged in the marketing of cranberries and cranberry products by participating together in an

effort to harm the reputation of Ocean Spray, their direct competitor, to deter purchasers from buying Ocean Spray's products with the intention of influencing those customers to purchase their products instead, and to influence cranberry growers not to join or to cease participating in the Ocean Spray cooperative.

121.   The members of the Ocean Spray agricultural cooperative are "producers" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that they are engaged in the growing of cranberries and the production of cranberry products.

122.   The Ocean Spray cooperative is an "association of producers" within the meaning of AFPA, 7 U.S.C. § 2302(2), in that its members are engaged in the marketing, bargaining, shipping, and processing of cranberries and cranberry products.

123.   Decas Cranberry knowingly and unlawfully falsely represented, and/or permitted its employees and/or agents to falsely represent, to the producer-members of the Ocean Spray cooperative that Ocean Spray is harming the cranberry industry by reducing cranberry utilization, creating significant excess supply, and depressing cranberry prices.   Such representations were made with the intention of and/or with the effect of influencing the producer-members to cease participating in the cooperative.   Such representations constitute false reports about the finances, management, or activities of the Ocean Spray agricultural cooperative and were made in violation of the AFPA, 7 U.S.C. § 2303(e).

124.   Decas Cranberry, Legacy Bogs and Swendrowski knowingly and unlawfully falsely represented, and/or permitted its employees and/or agents to falsely represent, to producers who are not members of the Ocean Spray cooperative that Ocean Spray is harming the cranberry industry by reducing cranberry utilization, creating significant excess supply, and depressing cranberry prices.   Such representations were made with the intention of and/or with

the effect of influencing these producers not to participate in the Ocean Spray cooperative, if given the opportunity.   Such representations constitute false reports about the finances, management, or activities of the Ocean Spray agricultural cooperative and were made in violation of the AFPA, 7 U.S.C. § 2303(e).

125.    As a direct and proximate result of defendants' unlawful conduct, the Ocean Spray cooperative has suffered and/or is likely to suffer damages and irreparable injury to its reputation and business in the form of lost beneficial business relationships with individual cranberry producers.

126.    Unless and until defendants' actions are enjoined, Ocean Spray will continue to suffer irreparable harm and damages.

127.    Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its damages in an amount to be determined at trial.

128.    Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its reasonable costs and attorneys' fees in an amount to be determined at trial.

## COUNT IV – Against all Defendants
### (Violation of the Agricultural Fair Practices Act, 7 U.S.C. § 2303(f) – Conspiracy)

129.    Ocean Spray repeats and realleges each and every allegation of this complaint.

130.    Decas Cranberry is a "handler" within the meaning of the AFPA, 7 U.S.C. § 2302(3), in that it is engaged in the business of acquiring cranberries for processing and sale; grading, packaging, handling, storing, or processing cranberries received from producers and/or associations of producers; and/or negotiating contracts and other arrangements with and on behalf of producers and associations of producers.

131.    John Doe Handlers 1-5 are "handlers" within the meaning of the AFPA, 7 U.S.C. § 2302(3), in that they are engaged in the business of acquiring cranberries for processing and sale; grading, packaging, handling, storing, or processing cranberries received from producers and/or associations of producers; and/or negotiating contracts and other arrangements with and on behalf of producers and associations of producers.

132.    John Doe Growers 3-20 are "producers" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that they are engaged in the growing of cranberries and the production of cranberry products.

133.    Decas Cranberry is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

134.    Legacy Bogs is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that it is engaged in the growing of cranberries.

135.    Swendrowski is a "producer" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that he is engaged in the growing of cranberries.

136.    Decas Cranberry, Legacy Bogs, Swendrowski and John Doe Growers 3-20 are an "association of producers" within the meaning of AFPA, 7 U.S.C. § 2302(2), in that they are collectively engaged in the marketing of cranberries and cranberry products by participating together in an effort to harm the reputation of Ocean Spray, their direct competitor, to deter purchasers from buying Ocean Spray's products with the intention of influencing those customers to purchase their products instead, and to influence cranberry growers not to join or to cease participating in the Ocean Spray cooperative.

137.    The members of the Ocean Spray agricultural cooperative are "producers" within the meaning of AFPA, 7 U.S.C. § 2302(4), in that they are engaged in the growing of cranberries and the production of cranberry products.

138.    The Ocean Spray cooperative is an "association of producers" within the meaning of AFPA, 7 U.S.C. § 2302(2), in that its members are engaged in the marketing, bargaining, shipping, and processing of cranberries and cranberry products.

139.    In violation of AFPA, 7 U.S.C. § 2303(f), Decas Cranberry, Legacy Bogs, Swendrowski, the John Doe Handlers and the John Doe Growers conspired, combined, agreed and arranged together to do and/or to aid and abet the violations of the AFPA set forth in Counts I-III above.

140.    As a direct and proximate result of defendants' unlawful conduct, the Ocean Spray cooperative has suffered and/or is likely to suffer damages and irreparable injury to its reputation and business in the form of lost beneficial business relationships with individual cranberry producers.

141.    Unless and until defendants' actions are enjoined, Ocean Spray will continue to suffer irreparable harm and damages.

142.    Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its damages in an amount to be determined at trial.

143.    Defendants' violations of 7 U.S.C. § 2303 entitle Ocean Spray to recover its reasonable costs and attorneys' fees in an amount to be determined at trial.

<u>**COUNT V – Against Decas Cranberry**</u>
**(Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) –**
**False Statements About Harming the Industry)**

144.    Ocean Spray repeats and realleges each and every allegation of this complaint.

145.    Decas Cranberry has, in commercial advertising and promotion in interstate commerce, misrepresented to cranberry growers, customers and prospective customers that Ocean Spray is harming the cranberry industry by reducing cranberry utilization, creating significant excess supply, and depressing cranberry prices.   Such representations constitute a false and misleading characterization of the qualities and characteristics of Ocean Spray's product and/or commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

146.    Decas Cranberry intended to confuse and deceive cranberry growers, customers and consumers into believing that Ocean Spray is harming the industry by causing oversupply, reducing utilization and depressing prices, when in fact it is not.

147.    Cranberry growers, customers and consumers have been and/or are likely to be confused and deceived into believing that Ocean Spray is harming the cranberry industry as result of Decas' false representations.

148.    Decas Cranberry's false and misleading statements have deceived and/or are likely to deceive a substantial segment of their intended audience.

149.    Decas Cranberry's false and misleading activities are material and have influenced and/or are likely to influence customers' and consumers' purchasing decisions regarding SDCs and other Ocean Spray products and cranberry growers' decisions about whether to participate in the Ocean Spray cooperative.

150.    As a direct and proximate result of Decas Cranberry's unlawful conduct, the goodwill associated with Ocean Spray and its products has been and/or is likely to be diminished, for which there is no adequate remedy at law.

151.    As a direct and proximate result of Decas Cranberry's unlawful conduct, Ocean Spray has suffered and/or is likely to suffer damages in the form of lost sales in an amount not presently known, and irreparable injury to its business reputation.

152.    Decas Cranberry's violations of 15 U.S.C. § 1125(a) are intentional and willful, and entitle Ocean Spray to recover its damages or Decas Cranberry's profits in an amount to be determined at trial.

153.    Decas Cranberry's intentional and willful violations of 15 U.S.C. § 1125(a) entitle Ocean Spray to recover its reasonable attorneys' fees in an amount to be determined at trial.

**COUNT VI – Against Decas Cranberry**
**(Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) –**
**Consumer/Grower Deception)**

154.    Ocean Spray repeats and realleges each and every allegation of this complaint.

155.    Decas Cranberry has, in commercial advertising and promotion in interstate commerce, disseminated false and misleading information to cranberry growers, customers and prospective customers about Ocean Spray and its Choice product while attempting to pass off the Scamberry.org campaign as originating from non-profit independent consumer advocates.  In disseminating such information, Decas Cranberry did not timely disclose its true identity as a direct competitor of Ocean Spray in the sale of SDCs and other cranberry products – and as of the date of this complaint Decas Cranberry has yet to disclose such true identity on the Scamberry.org or Scamberry.info websites.  Decas Cranberry has admitted that the purpose of this campaign is to defend its share of the SDC market and to sell more of its products.  Such

misrepresentations and omissions constitute false and misleading representations of fact in a commercial advertisement regarding Ocean Spray's product and/or commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

156.    Decas Cranberry intended to confuse and deceive growers, customers and consumers into believing that they were receiving information about Ocean Spray and its products from an independent consumer advocate, and not from Decas Cranberry.

157.    Decas Cranberry's misrepresentations and omissions have confused and deceived and/or are likely to confuse and deceive growers, customers and consumers into believing that they were receiving information about Ocean Spray and its products from an independent consumer advocate, and not from Decas Cranberry.

158.    Decas Cranberry's false and misleading statements have deceived and/or are likely to deceive a substantial segment of their intended audience.

159.    Decas Cranberry's false and misleading activities are material and have influenced and/or are likely to influence customers' and consumers' purchasing decisions regarding SDCs and other Ocean Spray products and cranberry growers' decisions about whether to participate in the Ocean Spray cooperative.

160.    Decas Cranberry's false and misleading activities are material and have prevented and/or are likely to prevent customers and consumers from making informed purchasing decisions regarding SDCs and other Ocean Spray products and growers from making informed decisions about whether to participate in the Ocean Spray cooperative.

161.    As a direct and proximate result of Decas Cranberry's unlawful conduct, the goodwill associated with Ocean Spray, Ocean Spray's "Choice" product, and Ocean Spray's

other cranberry products has been and/or is likely to be diminished, for which there is no adequate remedy at law.

162.    As a direct and proximate result of Decas Cranberry's unlawful conduct, Ocean Spray has suffered and/or is likely to suffer damages in the form of lost sales in an amount not presently known, and irreparable injury to its business reputation.

163.    Decas Cranberry's violations of 15 U.S.C. § 1125(a) are intentional and willful, and entitle Ocean Spray to recover its damages or Decas Cranberry's profits in an amount to be determined at trial.

164.    Decas Cranberry's intentional and willful violations of 15 U.S.C. § 1125(a) entitle Ocean Spray to recover its reasonable attorneys' fees in an amount to be determined at trial.

### COUNT VII – Against Decas Cranberry
**(Violation of the Massachusetts Unfair and Deceptive Trade Practices Act,
Mass. Gen. Laws ch. 93A, §§ 2, 11 -- False Statements About Harming the Industry)**

165.    Ocean Spray repeats and realleges each and every allegation of this complaint.

166.    At all times relevant to this complaint, Ocean Spray was engaged in trade or commerce within the meaning of Mass Gen. Laws ch. 93A, § 1(b).

167.    At all times relevant to this complaint, Decas Cranberry was engaged in trade or commerce within the meaning of Mass Gen. Laws ch. 93A, § 1(b).

168.    Decas Cranberry has, in person and through a website, a Facebook page, and a YouTube video, among other methods, misrepresented to cranberry growers and Ocean Spray's customers and prospective customers that Ocean Spray is harming the cranberry industry by reducing cranberry utilization, creating significant excess supply, and depressing cranberry prices.

169. Decas Cranberry intended to confuse and deceive cranberry growers, customers and consumers into believing that Ocean Spray is harming the industry by causing oversupply and reduced cranberry utilization, when in fact it is not.

170. Cranberry growers, customers and consumers have been and/or are likely to be confused and deceived into believing that Ocean Spray is harming the cranberry industry as result of Decas Cranberry's false representations.

171. Decas Cranberry's false and misleading statements have deceived and/or are likely to deceive a substantial segment of their intended audience.

172. Decas Cranberry's false and misleading activities are material and have influenced and/or are likely to influence customers' and consumers' purchasing decisions regarding SDCs and other Ocean Spray products and cranberry growers' decisions about whether to participate in the Ocean Spray cooperative.

173. Decas Cranberry's conduct, as set forth above, constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 2.

174. Decas Cranberry's conduct, as set forth above, has been material and has been knowing, willful, intentional, and/or in reckless disregard of Ocean Spray's rights.

175. As a direct and proximate result of Decas Cranberry's unlawful conduct, Ocean Spray has suffered and will continue to suffer damages in the form of lost sales in an amount to be determined at trial.

176. Decas Cranberry's intentional and willful violations of Mass. Gen. Laws ch. 93A entitle Ocean Spray to recover its actual damages in an amount to be determined at trial as well as multiple damages.

177.     Decas Cranberry's intentional and willful violations of Mass. Gen. Laws ch. 93A entitle Ocean Spray to recover its reasonable costs and attorneys' fees in an amount to be determined at trial.

178.     As a direct and proximate result of Decas Cranberry's unlawful conduct, Ocean Spray has been and will continue to be irreparably injured, for which Ocean Spray has no adequate remedy at law.

179.     Unless and until Decas Cranberry's actions are enjoined, Ocean Spray will continue to suffer irreparable harm and damages.

<u>COUNT VIII – Against Decas Cranberry</u>
**(Violation of the Massachusetts Unfair and Deceptive Trade Practices Act,
Mass. Gen. Laws ch. 93A, §§ 2, 11 -- Consumer/Grower Deception)**

180.     Ocean Spray repeats and realleges each and every allegation of this complaint.

181.     At all times relevant to this complaint, Ocean Spray was engaged in trade or commerce within the meaning of Mass Gen. Laws ch. 93A, § 1(b).

182.     At all times relevant to this complaint, Decas Cranberry was engaged in trade or commerce within the meaning of Mass Gen. Laws ch. 93A, § 1(b).

183.     Decas Cranberry has, in person and through a website, a Facebook page, and a YouTube video, among other methods, disseminated false and misleading information to cranberry growers, customers and prospective customers about Ocean Spray and its Choice product while attempting to pass off the Scamberry.org campaign as originating from non-profit independent consumer advocates.  In disseminating such information, Decas Cranberry did not disclose its true identity as a direct competitor of Ocean Spray in the sale of SDCs and other cranberry products.

184.    Decas Cranberry intended to confuse and deceive cranberry growers, customers and consumers into believing that they were receiving information about Ocean Spray and its products from a non-profit independent consumer advocate, and not from Decas Cranberry. Decas Cranberry has admitted that the purpose of the Scamberry.org campaign is to defend its share of the SDC market and to sell more of its products.

185.    Decas Cranberry's misrepresentations and omissions have confused and deceived and/or are likely to confuse and deceive cranberry growers, customers and consumers into believing that they were receiving information about Ocean Spray and its products from an independent consumer advocate, and not from Decas Cranberry.

186.    Decas Cranberry's false and misleading statements have deceived and/or are likely to deceive a substantial segment of their intended audience.

187.    Decas Cranberry's false and misleading activities are material and have influenced and/or are likely to influence consumers' and customers' purchasing decisions regarding SDCs and other Ocean Spray products and cranberry growers' decisions about whether to participate in the Ocean Spray cooperative.

188.    Decas Cranberry's false and misleading activities are material and have prevented and/or are likely to prevent consumers and customers from making informed purchasing decisions regarding SDCs and other Ocean Spray products and growers from making informed decisions about whether to participate in the Ocean Spray cooperative.

189.    Decas Cranberry's conduct, as set forth above, constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 2.

190.    Decas Cranberry's conduct, as set forth above, has been material and has been knowing, willful, intentional, and/or in reckless disregard of Ocean Spray's rights.

191.    As a direct and proximate result of Decas Cranberry's unlawful conduct, Ocean Spray has suffered and will continue to suffer damages in the form of lost sales in an amount to be determined at trial.

192.    Decas Cranberry's intentional and willful violations of Mass. Gen. Laws ch. 93A entitle Ocean Spray to recover its actual damages in an amount to be determined at trial as well as multiple damages.

193.    Decas Cranberry's intentional and willful violations of Mass. Gen. Laws ch. 93A entitle Ocean Spray to recover its reasonable costs and attorneys' fees in an amount to be determined at trial.

194.    As a direct and proximate result of Decas Cranberry's unlawful conduct, Ocean Spray has been and will continue to be irreparably injured, for which Ocean Spray has no adequate remedy at law.

195.    Unless and until Decas Cranberry's actions are enjoined, Ocean Spray will continue to suffer irreparable harm and damages.

## **RELIEF SOUGHT**

WHEREFORE Ocean Spray respectfully requests the following relief:

A.    That defendants' unlawful conduct be declared, adjudicated and decreed a violation of the Agricultural Fair Practices Act, 7 U.S.C. §§ 2301 et seq.;

B.    That defendants' unlawful conduct be declared, adjudicated and decreed a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

C.     That defendants' unlawful conduct be declared, adjudicated and decreed a violation of the Massachusetts Unfair and Deceptive Trade Practices Act, Mass. Gen. Laws ch. 93A, §§ 2, 11;

D.     That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:  (1) making false or misleading statements about Ocean Spray or its products, (2) making false reports about the finances, management or activities of the Ocean Spray cooperative, and (3) offering, promising or giving any thing of value, or offering any other inducement or reward to any cranberry grower/producer for refusing or ceasing to belong to the Ocean Spray cooperative;

E.     That Ocean Spray recover damages against Decas Cranberry , in an amount to be determined and multiplied, to the extent provided by law, but not less than $10,000,000;

F.     That Ocean Spray recover damages against Legacy Bogs and John Swendrowski, in an amount to be determined and multiplied, to the extent provided by law, but not less than $10,000,000;

G.     That Ocean Spray recover damages against each John Doe, in an amount to be determined and multiplied, to the extent provided by law;

H.      That Ocean Spray be awarded expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and

I.      That Ocean Spray be awarded such additional relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Ocean Spray demands a trial by jury on all issues triable by jury.

Dated: December 14, 2010

By: /s/ Margaret M. Zwisler
Margaret M. Zwisler (pro hac vice)
Jennifer L. Giordano (B.B.O. #650537)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  (202) 637-1092
Facsimile:  (202) 637-2201
Email:  margaret.zwisler@lw.com

Alfred C. Pfeiffer, Jr. (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Email:  al.pfeiffer@lw.com

Attorneys for Ocean Spray Cranberries, Inc.

DC/138314

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that Ocean Spray Cranberries, Inc.'s First Amended Complaint and accompanying Exhibit A were filed through the Court's ECF system on December 14, 2010 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Jennifer L. Giordano</u>
Jennifer L. Giordano